UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LINDA L. BOWERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-01613-TWP-TAB |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Linda L. Bowers ("Bowers") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

### I.   BACKGROUND

#### A.   Procedural History

On April 25, 2012, Bowers filed an application for SSI, alleging a disability onset date of January 1, 2008, due to major depression, bipolar disorder, post-traumatic stress disorder ("PTSD"), schizophrenia, psychotic disorder, and osteoporosis. (Filing No. 13-2 at 23.) Her claims were initially denied on August 8, 2012, and again on reconsideration. Bowers timely filed a written request for a hearing and on April 9, 2014, a hearing was held before Administrative Law Judge John H. Metz (the "ALJ"). Bowers was present and represented by counsel. A medical expert, Don A. Olive, Ph.D. ("Dr. Olive"), and a vocational expert, Ray O. Burger (the "VE"), appeared and testified at the hearing. *Id.* On May 1, 2014, the ALJ denied Bowers' application for SSI. *Id.* Following this decision, Bowers requested review by the Appeals Council and on

August 18, 2015, the Appeals Council denied Bowers' request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *Id.* at 2-4. On October 12, 2015, Bowers filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). ([Filing No. 1](#).)

**B.      Factual Background**

At the time of her January 2008 alleged disability onset date, Bowers was forty-two years old. She was forty-six years old at the time she filed an application for SSI. ([Filing No. 13-2 at 47](#): [Filing No. 16 at 3](#).) Bowers has a ninth grade education and attended regular classes. ([Filing No. 13-2 at 48-49](#).) Prior to the onset of her alleged disability, Bowers had three short-term jobs. For approximately three months, January to April 1995, she prepped food at a fast food restaurant. *Id*. at 51. Bowers stopped working at the fast food restaurant because it was too stressful. *Id*. For approximately two months in 2005, she worked as a deli clerk in a grocery store. *Id*. at 51-52. Bowers quit her job as a deli clerk because it was also too stressful. *Id*. at 52. She most recently worked as a cashier in a convenience store for about two months in 2007. *Id*. Bowers was fired from the convenience store because she missed several days of work after becoming sick due to a switch in her medication. *Id.* at 53. Bowers has not worked since June of 2007.

Bowers has a history of four in-patient psychiatric hospitalizations. *Id. at* 30. She was first referred by Middletown Center staff for psychiatric in-patient care in January 1997. ([Filing No. 13-10 at 6-7](#).) Bowers suffered from possible withdrawal symptoms from Xanax and was diagnosed with major depressive disorder. *Id*. at 7-8. In July 2000, Bowers was admitted to the psychiatric unit on an emergency detention status by police officers after she was aggressive toward her husband. *Id*. at 16. The police officers reported that Bowers' speech was rambling and she refused to follow their directions. *Id*. She was diagnosed with major depressive disorder,

recurrent, severe without psychosis; history of marijuana abuse; and relationship problems. *Id*. at 18.

In October 2001, Bowers was again admitted to a hospital on an emergency detention after she made suicidal threats and aggressive threats toward her husband. *Id*. Bowers was described as being confused, disoriented, talking to the television, talking to her deceased mother, and clapping her hands in a strange manner. *Id*. Upon discharge, Bowers was diagnosed with unspecific psychosis. *Id*. at 28.

Bowers was last hospitalized in June 2007 when she was admitted on an emergency detention order filed by police officers after they were notified of Bowers' strange behavior. (Filing No. 13-9 at 95.) When police officers arrived, Bowers accused them of raping her. *Id.* Bowers thought that the officers were going to kill her with their guns and thought that there were guns hidden in various places of her apartment. *Id.* Bowers reported that "a presence was all around." *Id.* During admission, Bowers denied, and did not exhibit, depression, anxiety, suicidal or homicidal ideation. *Id.* Upon discharge, she was diagnosed with schizophrenia and nicotine abuse. *Id.* at 96. Bowers was treated with Haldol, an antipsychotic medication, and Ativan, which resolved her psychosis. *Id*. at 95.

In August 2007, Bowers began treatment with Meridian Services. (Filing No. 13-10 at 134.) She was prescribed Invega 6 mg. *Id.* at 108. Since November 2007, Bowers has remained stable, with a normal mental status, while taking Invega. In June 2008, Bowers stated that her mood swings were in complete control and she denied having problems with hallucinations or paranoia. *Id*. at 106. Throughout the years, Bowers reported that she felt well and Invega was very helpful. *Id*. at 75, 114,124, 128, 131, 133.

In October 2009, Bowers went to Meridian Services for a medication review. *Id*. at 131. During that visit, she denied having any hallucinations or suicidal or homicidal thoughts. *Id.* at 132. The clinician noted that Bowers was stable and responding well to Invega. *Id.* at 133. One year later, in October 2010, Bowers again denied having hallucinations or any suicidal or homicidal thoughts and that her only side effect was slight weight gain. *Id*. at 83. Bowers was diagnosed with manic-depressive disorder, PTSD, and cannabis dependence. *Id*. In March 2012, Bowers reported that she had been stable for the past five to six years while taking Invega. ([Filing No. 13-2 at 32](#).)

On July 6, 2012, Bowers met with Ceola Berry, Ph.D., HSSP ("Dr. Berry"), upon referral by the disability determination office for a consultative mental status examination. ([Filing No. 13-7 at 27](#).) Bowers reported that she was diagnosed in 1986 with "clinical major depression," and in 2007 with bipolar disorder. *Id.* She stated that her son and her boyfriend resided with her. *Id.* She reported that she is able to dress, bathe and groom herself independently, but she usually does not. *Id.* at 28. Bowers' boyfriend explained that he completes most of the household activities of daily living. *Id.* Bowers reported that her typical day consists of waking up at 11:00 a.m., watching television, visiting her grandson who does not reside with her, and going to bed at 10:00 p.m. *Id.* She admitted that she smokes one pack of cigarettes a day and consumes an excessive amount of sugar and caffeine and reported that she has adequate relationships with family and friends. *Id.*

Bowers reported to Dr. Berry that she has not sought employment, because she has been trying to receive disability income. *Id.* Bowers also reported that her depression was unsuccessfully mediated by her psychotropic protocol. *Id*. at 28. However, when asked whether she informed her physician about the inefficiency, Bowers evaded the question and was unable to recall her most recent appointment for refill of her Invega. *Id.* at 27. Dr. Berry noted that Bowers'

mental status examination did not reveal any significant problems with concentration, short-term memory, mental calculation, abstracting ability or general knowledge. *Id.* at 28-29. Dr. Berry also found that although Bowers reported that she had PTSD (related to domestic abuse from her ex-husband), she did not have any prominent clinical signs of PTSD. *Id.* at 29.

On July 13, 2012, Donna Unversaw, Ph.D. ("Dr. Unversaw") completed a Psychiatric Review Technique assessment of Bowers. *Id*. at 30-34. Dr. Unversaw found that Bowers had mild limitations in activities of daily living and maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace. *Id.* at 31. Dr. Unversaw noted that Bowers was only partially credible when stating that her medication did not help with her depression because Bowers' psychiatric records indicate that she was stable while on Invega. *Id*. at 32. Dr. Unversaw opined that Bowers has the ability to complete unskilled, and semi-skilled, tasks. *Id.* William Shipley, Ph.D. ("Dr. Shipley") affirmed Dr. Unversaw's conclusions. *Id*. at 93.

At the hearing before the ALJ, Bowers testified that she was currently being treated by a doctor for bipolar disorder, PTSD, major clinical depression, and anxiety. (Filing No. 13-2 at 53.) She stated that she visits her psychiatrist every three months, but she does not feel comfortable undergoing psychiatric counseling. *Id.* at 54. Bowers testified that she does not currently hear voices, have crying spells, have thoughts of harming other people, or have thoughts of harming herself. *Id*. However, she does have the same nightmare approximately two to three times per week and she has three to thirty flashbacks per day. *Id*. at 64-65.

Bowers stated that she can groom herself, do laundry, wash dishes, mop, dust, and vacuum. *Id.* at 57-58. During the day to occupy her time she will do cleaning and try to watch TV, but cannot focus on the television for too long. *Id.* at 59. She testified that she does not like crowds with five people or more, which limits the time of day she goes grocery shopping. *Id*. at 60, 65.

5

If confronted with five or more people, Bowers testified that she goes in the opposite direction. *Id*. at 66. Bowers also testified that she has a really hard time keeping a job. *Id.* at 57. She stated that she is unable to work because she has issues concentrating on, and completing, tasks. *Id.* at 62. She testified that she has a problem staying focused on one thing for a very long period of time. *Id*. Bowers further testified that while working, she had no problem following written and verbal instructions. *Id.*

Dr. Olive, who was present during the hearing, heard Bowers' testimony and reviewed Bowers' medical record, testified that Bowers should be limited to simple repetitive tasks or unskilled work. *Id.* at 71. Dr. Olive testified that Bowers should have no more than occasional contact with the public and with peers. *Id.* Dr. Olive further opined that Bowers should work in a slow-paced work environment where she would do the same thing every day of the week. *Id.*

During the administrative hearing, the VE testified that Bowers' past employment as a cashier and food prep worker were light, unskilled work. *Id.* at 73. The ALJ presented a hypothetical scenario to the VE that included all of the limitations and restrictions that Dr. Olive set out for Bowers, with the additional limitation of Bowers' ninth grade education in regular courses, but no GED. *Id.* at 74. The VE testified that the hypothetical person could not perform Bowers' past work as a cashier or food prep worker because those jobs involved having contact with a lot of people. *Id.* The ALJ then tweaked the original hypothetical and asked whether there were any other light, unskilled jobs in the state or national economy that the hypothetical person could perform. *Id.* The VE testified that such a person could perform the jobs of a housekeeping cleaner, laundry worker, and a non-post office mail clerk. *Id.* at 74-75. The VE stated that the above jobs are the lesser kind that require no transfer of skills. *Id.* at 75.

## II.    DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th

Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted."

*Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ began the five-step analysis and first determined that Bowers had not engaged in substantial gainful activity since April 25, 2012, the application date. At step two, the ALJ found that Bowers had the following severe impairments: major depression, bipolar disorder NOS, PTSD, schizophrenia, psychotic disorder NOS, and cannabis dependence. At step three, the ALJ concluded that Bowers does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Bowers had an RFC to perform a full range of work at all exertional levels, but with the following limitations:

> [S]imple and repetitive tasks (or unskilled work) with no more than occasional contact with the public and with peers. The work should be regular in expectations in that whatever work is done on Monday is done throughout the week with little or no change. There should be no fast-paced work involved.

(Filing No. 13-2 at 29.) At step four, the ALJ found that Bowers did not have any past relevant work. At step five, the ALJ determined that Bowers was not disabled because there were jobs that existed in significant numbers in the national economy that Bowers could perform, considering her age, education, work experience, and RFC. Those jobs included housekeeping, laundry worker, and non-post office mail clerk. Therefore, the ALJ denied Bowers' application for SSI because she was not disabled.

9

## IV.   DISCUSSION

In her request for judicial review, Bowers asserts two reasons for remand.  First, Bowers alleges that the ALJ failed to present a complete picture of Bowers' RFC when questioning the VE.  Specifically, Bowers argue that the ALJ failed to address Bowers' difficulties with concentration, persistence, or pace in the hypothetical questions to the VE or in the adopted RFC.  Second, Bowers alleges that the ALJ erred in failing to consider her past unsuccessful work attempts and her reaction to stress in the workplace.  The Court will address each of these arguments in turn.

### A.   Concentration, Persistence, and Pace

Bowers alleges that the ALJ failed to address her issues of concentration, persistence, and pace when asking the VE the main hypothetical[1] question.  When presented with a hypothetical, a vocational expert must be provided with a complete picture of a claimant's limitations.  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir.2009); *Kasarsky v. Barnhart,* 335 F.3d 539, 544 (7th Cir.2003); *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir.2002).  This includes being informed of a claimant's deficiencies of concentration, persistence and pace.  *Id.*

Bowers argues that that the ALJ's finding that she can perform regular, repetitive, unskilled, slow-paced work does not account for her difficulties with memory, focus, and concentration.  Bowers contends that the ALJ attempts to discredit her testimony that she is unable to work because she has a hard time focusing, concentrating and completing tasks by stating that Bowers has the ability to follow verbal or written instructions.  Bowers asserts that her ability to

---

[1] "We have a 48-year old. We have a person who has a [ninth] grade education regular courses; not [S]pecial [E]d, but no GED. There's no physical limitation. Take into consideration the mental limitations eluded to by Dr. Olive.… take all these assumptions into consideration, could such an individual perform any of the claimant's past relevant work either as she has performed it or as generally performed in state or national economy?" (Filing No. 13-2 at 74.)

follow verbal and written instructions does not equate to her ability to maintain focus and concentration when attempting to complete tasks. Bowers further argues that the ALJ had no reasonable basis to conclude that Bowers is able to perform simple and repetitive tasks with minimum public interactions.

The Commissioner responds to Bowers' argument by explaining that the ALJ adequately relied on Dr. Olive's, Dr. Shipley's, and Dr. Unversaw's medical opinions when assessing Bowers' RFC. The ALJ's RFC findings mirrored Dr. Olive's opinion and was consistent with Dr. Unversaw's and Dr. Shipley's opinions. The Commissioner asserts that these opinions are not contradicted. Dr. Olive reviewed Bowers' entire medical record and opined that Bowers was capable of performing unskilled, or even semi-skilled, tasks. Dr. Shipley agreed with Dr. Olive's finding. Dr. Olive's finding is also consistent with Dr. Unversaw's opinion. Dr. Unversaw and Dr. Shipley opined that Bowers was not disabled because she was stable and had normal mental status examinations when she taking Invega. "[An] ALJ is entitled to rely on medical experts when no contrary evidence is presented." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Flener ex rel. Flener v. Barnhart,* 361 F.3d 442, 448 (7th Cir.2004).

The Commissioner also argues that, although the ALJ did not *per se* state the terms "concentration, persistence, and pace," the ALJ's assessment included specific limitations to accommodate Bowers' slow-paced, unskilled, repetitive work needs, which accounted for Bowers' difficulties in maintaining concentration, persistence, and pace. The Seventh Circuit has not imposed "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. Courts allow an ALJ to omit "the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's

11

limitations would be unable to perform." *Id*; *see also Day v. Astrue*, No. 4:11-CV-114-WGH-SEB, 2012 WL 1340777, at *15 (S.D. Ind. Apr. 18, 2012) (holding that an ALJ adequately accounted for a plaintiff's moderate limitations with concentration, persistence, and pace where the ALJ limited the plaintiff to simple, unskilled, non-fast paced work with a break approximately every two hours).

After reviewing the ALJ's decision and the record evidence, the Court determines that the ALJ did not fail to address Bowers' issues of concentration, persistence, and pace when asking the VE the main hypothetical scenario and determining Bowers' RFC.

**B.**     **Bowers' Stress with Prior Work Experience**

Bowers next argues that the ALJ erred by not considering the stress she experienced with past employment as proof of Bowers' inability to work. Bowers performed jobs as a food prep worker, deli clerk, and a cashier prior to the disability onset date of January 1, 2008. Bowers quit her jobs as a food prep worker and deli clerk after only a couple of months because she found the jobs too stressful. Bowers has not worked since June 2007. "Where it is established that the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." *Gatliff v. Comm'r of Soc. Sec. Admin.,* 172 F.3d 690, 694 (9th Cir. 1999). Bowers asserts that the ALJ's opinion is silent regarding her limitations when it comes to stress in workplaces.

In response, the Commissioner asserts that Bowers' argument is undermined by the fact that the ALJ plainly found that Bowers did not engage in substantial gainful employment, and has no past relevant work experience. The Commissioner further contends that the ALJ was not required to expressly address Bowers' testimony about her past work experience between 1995 and 2007, which was a year before her alleged disability onset and more than four years prior to

12

Bowers' SSI application. *See Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) ("[T]he ALJ is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to her conclusions.")). The Commissioner again argues that ALJ was entitled to rely on the medical opinions when determining Bowers' RCF, as well as, on the VE's testimony that Bowers remains capable of performing a significant number of jobs despite her limitations.

The Court finds that the ALJ did not err in concluding that Bowers had no relevant employment history and further relying on the uncontested medical opinions that Bowers is capable of performing a significant number of jobs. Therefore, remand is not warranted in this case.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED.** Bowers' appeal is **DISMISSED**.

**SO ORDERED.**

Date: 10/26/2016

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov